Merrimack,  )
Sept. 6, 1904. )

## UNITED STATES FIDELITY & GUARANTY CO. v. LINEHAN.

In the absence of legislative prohibition, a foreign corporation which is authorized to write distinct classes of insurance may by comity engage in its multiform business within this state, subject to the restrictions of its charter provisions and such regulations and conditions as have been imposed by the legislature.

When a foreign corporation which is authorized by its charter to carry on distinct lines of insurance has complied with the statutory regulations, and the insurance commissioner is satisfied that it is safe, reliable, entitled to public confidence, and possesses the requisite capital and assets, he cannot withhold from such company a license to do business within this state, on the ground that he believes the combination of risks to be theoretically unsafe and contrary to public policy.

The duty of the insurance commissioner to issue a license empowering a foreign insurance company to carry on business within this state is enforceable by a petition for *mandamus*.

PETITION, for *mandamus*. Facts found, and case transferred from the October term, 1901, of the superior court, by *Stone*, J.

The plaintiff is incorporated under the laws of Maryland, and under authority of its charter is engaged outside of New Hampshire in the business of a fidelity and surety company and in the burglary insurance business. It was licensed to do business as a fidelity and surety company in this state on February 17, 1897, since which date its license has been renewed continuously, except for a short time after May 29, 1900. On July 16, 1900, and on other dates since then, the plaintiff requested the defendant to issue to it a license to do a burglary insurance business in New Hampshire, in addition to the license to do fidelity and guaranty business, and the defendant refused to do so. It has complied with all the provisions of the statutes which are a prerequisite to the issuance of the license prayed for, if it is entitled thereto.

The defendant, acting in good faith in his capacity as insurance commissioner, refused to issue a license to the plaintiff company. While he believed that, as a general rule, speaking not of to-day but of the future, no company that does a surety business in combination with any other business is a safe and reliable company, he was satisfied that the plaintiff was a safe, reliable company, entitled to public confidence at present, and should consider it as such if permitted to do burglary insurance business in New Hampshire. He also believed that it would be contrary to public policy to permit such a combination of surety and other insurance busi-

ness in this state. This belief was based upon the length of time that must necessarily elapse before the ultimate liability on surety bonds can be ascertained, and upon the lack of statistics from which to compute the proper relation between reserve fund and liability. But he believed this company would be able to do its entire business with perfect safety if permitted to do burglary insurance business in New Hampshire in addition to its other lines, and would continue so unless the company added more hazardous lines than the one now proposed; but he objected to licensing this company because he believed that it was against public policy, for the reason that the combination of surety business with other insurance business was unsafe as a general proposition.

*Streeter & Hollis*, for the plaintiff.

*Eastman & Hollis*, for the defendant.

Walker, J. The plaintiff is a Maryland corporation, and under its charter it is authorized to carry on in combination the business of a surety company and that of a burglary insurance company. Both classes of business properly fall under the general designation of insurance. The plaintiff is an insurance company empowered by its charter to do a dual insurance business. But its charter does not confer upon it power to engage in business in New Hampshire. Such power, if it exists, is derived from the expressed or implied will of the legislature of this state. It is a privilege or license which the legislature may withhold from corporations, like the plaintiff, organized in other states. *Pembina Mining Co.* v. *Pennsylvania*, 125 U. S. 181. But in the absence of express legislation against the exercise of the privilege by such corporations, it is generally held that they acquire the right by comity, or that legislative silence upon the subject is equivalent to permission. 2 Mor. Corp., *ss.* 960, 961; *Cowell* v. *Springs Co.*, 100 U. S. 55, 59. A state policy may be as thoroughly established in this way as by positive enactment. If the legislature does not see fit to prohibit a foreign corporation from carrying on its business here, when it is not repugnant to common-law principles, it in effect declares the public policy of the state to be favorable to its engaging in business here. The presumption of legislative intention, founded upon the doctrine of comity, affords ample evidence in support of that conclusion.

It is not claimed that there is any legislation in this state which prohibits an insurance company of another state from carrying on here the business of a surety company or that of a burglary insurance company. In accordance, therefore, with the principle above

noted, it follows that it is the policy of the state to permit companies to engage here in those lines of insurance, restricted only by their charter provisions and such regulations or conditions as the legislature has enacted relating to the business of insurance.   By comity, they are invested with a qualified right to do business here, of which they cannot be deprived except by legislative prohibition.   These principles have received legislative sanction in statutes regulating the business of foreign insurance companies and surety companies.   P. S., cc. 169, 172.

Nor has the legislature furnished evidence of a policy to exclude from the state insurance companies which combine two or more distinct classes of insurance business.   In *United States etc. Co.* v. *Linehan*, 70 N. H. 395, it was held that a foreign surety company may be licensed to transact that business in this state, although authorized by its charter to engage in other business.   The legislature had not made the fact that it was authorized by its charter to do several kinds of insurance business conclusive evidence against its right, by comity, to do one kind.   In *Employers' Assurance Corp.* v. *Merrill*, 155 Mass. 404, 405, it is said: "Before the year 1879, foreign companies authorized by their charters to transact more than one class of insurance, and admitted here, were not restricted in their operations by our statutes.   But since the passage of the statute of 1879, c. 130, such companies, with exceptions not material to the present case, have been required to elect one class or kind of business, and allowed to transact here only that class or kind"; and the court further say (*p.* 410), that originally "foreign companies, under certain conditions not restricting the classes of risks which they might write, were allowed to transact business here.   A license or certificate of authority from the insurance commissioner was first provided for by the statute of 1878, c. 130, s. 6, and the foreign company to whom it was issued was thereupon 'authorized to transact business in this commonwealth,' and was restricted only by its charter."

A similar result was reached in *People* v. *Company*, 153 Ill. 25, where it was held that in the absence of any prohibition in the statute against the business of multiform insurance, the comity that prevails between the states permits a foreign corporation to do such insurance in Illinois, although the statute of that state does not authorize the formation of companies for that purpose. See, also, *State* v. *Company*, 39 Minn. 538.   By comity, the plaintiff acquired the right to carry on its dual business in this state, subject to the statutory regulations imposed upon foreign insurance companies; and its right in this respect, until revoked by the legislature, is as secure and stable as though it had been acquired by express grant from that body.

As the legislature has in effect authorized foreign insurance corporations carrying on more than one line of insurance to exercise their charter powers in this state, subject to certain statutory regulations, it is clear that they cannot be excluded by the commissioner simply upon the ground that he believes that such combinations, as a general rule, are opposed to the public interest. If such a company has complied with the prescribed regulations, and "the commissioner is satisfied that the company has the requisite capital and assets, and that it is a safe, reliable company, entitled to confidence, he shall grant a license to it to do insurance business by authorized agents within the state, subject to the laws of the state, until the first day of April thereafter." P. S., c. 169, s. 6. If upon examination he finds that the company has complied with the requirements of the statute, and he is satisfied that it has the requisite capital and assets, and "that it is a safe, reliable company, entitled to confidence," it is his duty to grant the license. The finding of these facts in favor of the company renders immaterial his opinion as to the general nature of the insurance business it is authorized by its charter to do. The duty imposed upon him is to carry out the purpose of the legislature judicially ascertained; and that purpose does not authorize him officially to pass upon the general question of the utility of permitting foreign insurance companies to do business in this state. The nature of the applicant's business is undoubtedly to be considered by the commissioner, as evidence, upon the question of its reliability as a business corporation; and it is conceivable that that alone might warrant his finding of the fact of its unreliability. Also, the difficulty of computing the ratio between its reserve fund and its liabilities is an evidentiary fact bearing upon the question of its financial soundness. But when, upon the evidence before him, he is satisfied, as he was in this case, that the company "was a safe, reliable company, entitled to public confidence at present," that "its methods of business were safe and conservative," and that it "would be able to do its entire business with perfect safety if permitted to do burglary insurance business in New Hampshire in addition to its other lines, and would continue so unless the company added more hazardous lines than the one now proposed," he cannot exclude it on the ground that it is theoretically unreliable. If by reason of the dual character of its business he was unable to determine the question of its reliability, or if he was satisfied that such a business combination rendered this company unsafe in fact for public patronage, his refusal to grant it a license would seem to have been amply justified. The evidence which satisfies him that the company is entitled to public confidence shows that his theory

that such companies are not safe and reliable is not of universal application and ought not to be invariably followed. The character of its business does not afford conclusive proof that it is unsafe. It may be safe in the statutory sense, notwithstanding it does a dual business; and the commissioner's finding that it is safe and reliable, as a matter of fact, renders the objection that it is theoretically unsafe of little practical consequence. However it may be with other similar companies, the commissioner finds that this company now possesses all the statutory requirements for carrying on its business in this state; comity favors its admission; hence it is entitled to the license sought as a matter of legal right. It only remains for the commissioner to perform the ministerial duty of issuing the license; and that duty may be appropriately enforced in this proceeding. *Boody* v. *Watson*, 64 N. H. 162; *Hart* v. *Folsom*, 70 N. H. 213, 217; *Manchester* v. *Furnald*, 71 N. H. 153, 158.

*Petition granted.*

All concurred.