Merrimack,
June 6, 1916.

ATTORNEY-GENERAL (*ex rel.* LEE V. KNAPP & a.) v. JAMES A. LITTLEFIELD & a.

A vote of a town meeting against the establishment of a village district, upon the report of a layout by the selectmen, is not a bar to a subsequent proceeding for the establishment of a district with other boundaries.

A petition for the laying out of a village district under P. S., c. 53, s. 1, which states that the layout is desired for "any or either of the following purposes," and then enumerates all the purposes mentioned in the statute, is sufficiently definite without specifying the particular purposes for which the district is desired.

A *quasi* judicial tribunal is bound to act fairly and honestly and to exercise its best judgment in reaching a decision; and its action, if the result of unfairness, prejudice and a gross abuse or misuse of discretion and judgment, is invalid, and may be set aside by the court in the exercise of its superintending power.

The superintending power of the court over inferior tribunals, whether exerted by mandamus or otherwise, may be exercised by requiring the body to act, but their finding, if set aside on the ground of irregularity, is not correctible by an order of court directing what the finding should be.

Where the report of selectmen, upon a petition for the establishment of boundaries for a village district, has been set aside on the ground that they have not acted in good faith, they are disqualified by prejudice from further consideration of the question, and such orders may be made, in the absence of statutory limitation, as will correct the error and afford the parties a judicial trial before an impartial tribunal.

PETITION, for a writ of mandamus against the defendants as the selectmen of Danbury praying that they be commanded to establish boundaries for a village district in Danbury under chapter 53 of the Public Statutes. The case was referred to a master who found the following facts: The relators sometime previous to April 16, 1915, presented a petition to the selectmen for the laying out of a village district, and after their report thereon, at a legal meeting of the voters living in the proposed district held on the above date, "the proposition" was defeated. In May, 1915, the relators filed another petition with the selectmen for fixing the boundaries of a village district, which was somewhat different from the former petition, and the defendants made a return including in the layout much land not reasonably adapted to, or useful for, a village district. Each of them expressed views hostile to the proposition, and evinced a purpose of including so much territory within the boundaries.

that the voters of the district would not accept the layout.  At the hearing upon the master's report the court found "that the said defendants have neglected and refused to perform in good faith their duties as selectmen of the town of Danbury in accordance with the provisions of chapter 53, section 1 of the Public Statutes," and the court made an order commanding the defendants to establish boundaries as set forth in the relators' petition to them.  At the hearing the defendants moved that the petition for a mandamus be dismissed.  The court denied the motion and the defendants excepted.  They also excepted to the order of the court.  The case was transferred from the October term, 1915, of the superior court by *Branch*, J.

*Stevens, Couch & Stevens* (*Mr. Couch* orally), for the plaintiff.

*Martin & Howe* (*Mr. Howe* orally), for the defendants.

WALKER, J.  It is claimed by the defendants that at the meeting of the citizens resident in the proposed district held in April, 1915, the vote against "the proposition" amounts to a judgment and is a bar to any action by the selectmen upon the last petition.  The argument is that the petitioners, having failed in getting an affirmative vote for the establishment of the district in the first instance, are bound by that vote, and cannot renew the application and have a second layout by the selectmen submitted to the voters of the proposed district.  The statute under which these proceedings were brought provides that, "Upon petition of ten or more legal voters, inhabitants of any village situate in one or more towns, the selectmen of such town or towns shall fix, by suitable boundaries, a district including the village and such adjacent parts of the town or towns as may seem to them convenient, for any or either of the following purposes:  The extinguishment of fires, the lighting or sprinkling of streets, the planting and caring for shade and ornamental trees, the supply of water for domestic and fire purposes, the construction and maintenance of sidewalks and main drains or common sewers, and the appointing and employing of watchmen and police officers."  P. S., c. 53, s. 1.  Section 2 provides that, "Such selectmen shall also forthwith call a meeting of the legal voters residing in the district to see if they will vote to establish the district, and if so to choose necessary officers therefor."

It does not appear in terms what the report of the selectmen upon

the first petition was, nor is it clear what "the proposition" was that was defeated at the district meeting. It may be assumed, however, that the vote was against the establishment of a district for any purpose as laid out by the selectmen. But it was not also a vote against having a district laid out with other boundaries. It was not a vote against having or establishing a district differently laid out. The voters had no power to vote upon the question of the general feasibility of a precinct system in Danbury. The district they were authorized to vote for or against was simply the one the extent of which was defined in the selectmen's report. It is clear, therefore, if the doctrine of *res adjudicata* is germane to the present inquiry (a proposition of some doubt, *Strafford's Petition*, 14 N. H. 30; *Bath's Petition*, 22 N. H. 576, 580; *Howard's Petition*, 28 N. H. 157; *Boscawen's Petition*, 33 N. H. 421), that the first vote is not a bar to the subsequent proceedings for the establishment of a village district not identical with the first layout of the selectmen. If it is a matter within the discretion of the court (*Whitcher* v. *Landaff*, 48 N. H. 153), its refusal to dismiss the petition upon the defendants' motion, is a finding that under the circumstances the present petition ought to be heard, and consequently that the second application to the selectmen was properly made. At most, their layout was only a preliminary though necessary step to final action by the voters. It possesses few, if any, of the essential elements of a judgment.

The defendants insist that, as a matter of law, they had no jurisdiction to act, because the relators did not specify in their petition the particular purposes for which a village district was desired, and that a specification of "any or either" of the purposes mentioned in the statute is too indefinite to confer jurisdiction on the selectmen to proceed with the layout. The argument is based principally upon the rule relating to a petition for the laying out of a highway, which it is said must describe the highway desired and not several routes, as a jurisdictional fact. *Spaulding* v. *Groton*, 68 N. H. 77, 78. But it is not perceived what application the argument by analogy has in the present case; for the petition contained a statement that the layout was desired for "any or either of the following purposes," designating all the purposes mentioned in the statute. It informed the selectmen in effect that a layout reasonably convenient for the accomplishment of all the purposes named in the statute was desired. If some of them were impracticable or ill-adapted to the situation in Danbury, others were clearly feasible,

and the district, when organized as a body politic, could determine how many of the designated powers or rights it would exercise. It was not within the scope of the selectmen's duty to decide that question. If the petition had used the word "all" instead of "any or either," the purpose of asking for a layout would not have been more apparent. The fact that the petitioners did not exclude any of the statutory rights which the district might acquire is evidence that they did not intend to exclude any of them but to include all of them. If, therefore, the question presented is a jurisdictional one, little doubt can be entertained that the selectmen were authorized under the petition to consider all the purposes mentioned, in deciding upon the district boundaries. The defendants' argument would lead to the conclusion that but one purpose could be legitimately alleged in a single petition, and hence that several petitions would be necessary, if there were several purposes. Such a result shows the unsoundness of the argument. The petition was sufficient to authorize the defendants to act under the statute.

The case as presented is an application to the general superintending power of the court for relief from a somewhat unfortunate and awkward situation. Upon the hearing before the court upon the master's report, it was found as a fact that the selectmen in establishing the boundaries of the proposed district "neglected and refused to perform in good faith their duties as selectmen of the town of Danbury in accordance with the provisions of chapter 53, section 1 of the Public Statutes with respect to the petition of the relators." This finding is fully supported by the evidentiary facts reported by the master. As a *quasi* judicial tribunal it was the duty of each member of the board to exercise a fair and reasonable judgment upon the only question before them which was, what boundaries of the proposed district would best promote the public interests of the village as enumerated in the statute. It was no part of their duty to consider whether there were sufficient reasons of public policy for the establishment of a village precinct under the statute. That question is expressly submitted by section 2 of the statute to the voters, living within the boundaries of the layout, acting upon it at a legal meeting called for that purpose by the selectmen, after the board has fairly and honestly fixed the limits of the proposed district. Like a board of twelve jurymen in reaching a verdict in an action at law, this board of three selectmen, charged with the duty of exercising a reasonable discretion in deciding the single issue before them, were bound to act fairly and hon-

estly and to exercise their best judgment in reaching a decision. If their report is not the result of these qualities, but of unfairness, prejudice and a gross abuse or misuse of discretion and judgment, it is not the decision contemplated by the statute, and is no more sustainable than a verdict of a jury reached in a similar manner. Reprehensible conduct of that character does not promote justice as judicially defined. The interests of the public represented by the attorney-general cannot be thus jeopardized. *Tenney* v. *Evans*, 13 N. H. 462, 466; *Wiggin* v. *Plumer*, 31 N. H. 251, 272; *Beattie* v. *Hilliard*, 55 N. H. 428, 455; *Boynton* v. *Trumbull*, 45 N. H. 408; *Doody* v. *Railroad*, 77 N. H. 161, 163, 164.

The order of the court, granting the prayer of the petition for a man'damus, based upon a finding of fact that the selectmen did not act in good faith in making the layout, but were actuated by prejudice and a purpose to defeat the establishment of any village district by a refusal to exercise a reasonable judgment upon the question before them, is equivalent to an order setting aside the return of the selectmen and is the exercise of the same judicial power which authorizes the setting aside of verdicts for similar reasons. So far at least as the order has that result, it was warranted by the facts.

But the command to the defendants requiring them to establish district boundaries "in accordance with the boundaries suggested by the relators in their said petition to said selectmen," was erroneous as a matter of law. It attempted to substitute the discretion of the court for that of the selectmen in whom the statute exclusively vests it. As was said by *Carpenter*, J. in *Boody* v. *Watson*, 64 N. H. 162, 198, the court "may quash their doings for want of jurisdiction or for irregularity, but cannot revise their decisions upon the merits, or do what they ought to have done." See also same case, opinion by *Doe*, C. J., page 186. "The superintending power of the court is limited to the correction of errors of law apparent upon the record, or to requiring the body to act if they refuse to entertain a contest." *Sheehan* v. *Mayor*, 74 N. H. 445, 446; *Attorney-General* v. *Sands*, 68 N. H. 54; *Doughty* v. *Little*, 61 N. H. 365; *Manchester* v. *Furnald*, 71 N. H. 153; *Dinsmore* v. *Mayor*, 76 N. H. 187; *Grafton &c. Co.* v. *State*, 77 N. H. 490, 501; High Ext. Rems. ss. 42, 152. As the statute provides for no appeal from the decision of the selectmen on the question of district boundaries, the presumption is that the legislature intended that it should be final, unless set aside by the superintending power of the court for errors

of law or for manifest irregularities. But when set aside on the ground of irregularity, it is not ordinarily correctible by the court, or by order of the court specifically finding what the verdict should be. The fact that the report of the defendants appeared to the court to be unreasonable or absurd may have been evidence of some weight upon the question of their qualification to act; but it did not confer jurisdiction upon the court to require them to revise their findings in accordance with its view of what was reasonable.

It does not follow, however, that the petitioners must submit to another layout by the same board of selectmen. Ordering them, who are clearly disqualified to act judicially in the matter, to again decide the same boundary question, would be a travesty on justice and tend to bring legal procedure in this state into much disrepute. It is not reasonable to suppose that this litigation has had the effect of decreasing their hostility to the precinct project or of rendering them more inclined to act reasonably and in good faith, upon a reconsideration of the subject. The findings of the court and of the master show conclusively that they are disqualified to act in this matter.

If, when the petition was presented to them, they had declined to act because they were disqualified, recourse could have been had to the provisions of section 8, chapter 45, P. S., relating to hearings before town officers, which are as follows: "If in any case the whole board is disqualified, the selectmen shall, in writing, so inform some justice of the supreme court, who shall thereupon, with or without notice, appoint a new board for that case from qualified persons who have before holden the same office in the town, if such there be, otherwise from qualified persons, residents of another town, who have holden the same office." In section 6 it is provided that, "No selectman or other officer shall act, in the decision of any such case, who would be disqualified to sit as a juror for any cause." This provision is in recognition of the general legal principle universally recognized in the interest of justice. If the defendants knew that they were disqualified to act upon the relators' petition, or that they could not or would not consider the matter fairly and discretely, it was their duty to apply under the statute for the appointment of another board. And no reason is apparent why they may not now perform that duty, in view of the fact, judicially ascertained, that they are disqualified to determine and establish the boundaries of the proposed district.

It is not important what name is applied to this proceeding. To

call it mandamus does not limit or abridge the superintending power of the court over the inferior tribunal whose proceedings are under consideration.     P. S. c. 204, s. 2; *Boody* v. *Watson, supra,* 172, 177, 179, 180, 185; *Dinsmore* v. *Mayor, supra,* 190.   If it appears that there has been, as a matter of law, such irregularity in the proceedings that they have resulted in a mistrial and consequent denial of justice, as in case the tribunal is disqualified to decide the matter, the court upon a proper petition is authorized to make such orders, in the absence of statutory limitation, as will correct the error and afford the parties a judicial instead of a non-judicial trial. A failure of justice because of the misconduct or prejudice of jury-men in returning a verdict is not obviated by ordering a new trial before the same prejudiced and incompetent jury.   For equally cogent reasons the corrective power of the court in this case would be ineffectual by ordering the disqualified selectmen to reconsider the question of the district boundaries.   The statutory procedure, above referred to, provides an ample and convenient means for the settlement of the boundary controversy before an impartial tribunal.

The result is, that so much of the order of the court as in effect set aside the selectmen's layout is sustained, that so far as the order commanded them to establish boundaries in accordance with those desired by the relators, it is vacated, and that the pending proceedings may be continued for further action in accordance with the above suggestions.   It has been assumed, in the absence of any suggestions to the contrary, that the defendants are still the selectmen of Danbury.

Certain exceptions were taken to the admission and exclusion of evidence before the master which do not seem to be of serious importance and which counsel did not argue at the hearing.   They are, therefore, overruled upon the ground that they present no error.

*Case discharged.*

All concurred.