Strafford,  }
Nov. 7, 1928. }

AETNA CASUALTY AND SURETY COMPANY & a.

*v.*

JOHN E. SULLIVAN, *Insurance Commissioner.*

Demond, Woodworth, Sulloway & Rogers (Mr. Demond orally), for the plaintiffs.

Jeremy R. Waldron, attorney-general, and John P. Carleton, assistant attorney-general (Mr. Carleton orally), for the defendant.

PEASLEE, C. J. This proceeding is designed to review the action of the insurance commissioner in refusing to renew the licenses of certain foreign insurance companies to do business in this state. The controversy relates to automobile public liability insurance, and the plaintiffs' conduct in relation thereto.

The statute under which the commissioner acted reads: "If . . . the commissioner is satisfied that the company has the requisite capital and assets and is a safe, reliable company, entitled to confidence, he shall grant a license to it . . . ; and . . . such license may be renewed so long as the company shall comply with the requirements of the law and the commissioner shall regard it as safe, reliable and entitled to confidence." P. L., c. 275, s. 11.

I. The underlying question presented here is whether the above provision relates solely to financial responsibility, or whether it has a broader scope and requires the commissioner to refuse to grant a license if for other reasons he is satisfied that it does not appear that

the applicant is reliable and entitled to confidence. Upon the plain meaning of the language used, the latter is the true interpretation. It is matter of common knowledge that not every opulent individual or corporation is either reliable or entitled to confidence. Mere ability to pay does not prevent one from being a cheat, or from taking unfair advantage of those in need.

The idea that insurance companies are peculiarly exposed to temptation in such respects, and that they sometimes yield thereto, has found frequent expression both in legislation and in judicial decisions. This view long antedated the adoption of the statute under consideration. The enactment involved no innovation in that respect.

It is urged that such an interpretation leaves the matter with no certain test for admissibility established. It is true that the test is not a mathematical one; but it may well have been regarded by those who established it as a very practical one, and well calculated to protect the people of the state from the supposed abuses above referred to. The commissioner could ascertain, as the ordinary individual could not, whether the company was honorable in its dealings and whether it offered fair or unfair contracts. The measure was enacted for the protection of the people, rather than for the benefit of the companies. Past experience was believed to show the need for such protection, and the statute is to be construed from that point of view.

Similar tests for qualification in certain occupations are frequently prescribed by statute. School teachers (P. L., c. 117, s. 11), hawkers and peddlers (P. L., c. 157, s. 2), junk dealers (P. L., c. 159, s. 1), lightning-rod dealers (P. L., c. 160, ss. 3, 5), guides (P. L., c. 203, s. 5), physicians (P. L., c. 204, s. 10), dentists (P. L., c. 205, s. 7), chiropractors (P. L., c. 206, s. 8), optometrists (P. L., c. 207, s. 22), veterinarians (P. L., c. 209, s. 12), pharmacists (P. L., c. 210, s. 30), nurses (P. L., c. 211, s. 1), dealers in securities (P. L., c. 284, ss. 10, 12), and lawyers (P. L., c. 325, ss. 2, 3) are all required to possess certain character qualifications. If the argument advanced here were sound, then all these statutes would be void as furnishing no certain test to guide the action of those whose duty it is to pass upon the qualification of the applicants. *Hanover &c. Precinct* v. *Atkins*, 78 N. H. 308; *Sundeen* v. *Rogers, ante,* 253.

The court has not heretofore found it impossible to apply the test of worthiness of public confidence. "Character, no less than medical education, skill, and experience, is, within the meaning of the statute, a qualification for a competent physician or surgeon. One who does not possess the requisite qualifications cannot be worthy of public

confidence." *Gage* v. *Censors*, 63 N. H. 92, 94. Power to grant a license upon a finding that the applicant is a suitable person, may be conferred. *State* v. *Cohen*, 73 N. H. 543; *Diepenbrock* v. *State Board*, 82 N. H. 451.

The suggestion that the provision for licensing foreign insurance companies originated with Laws 1870, chapter 1, overlooks the provision found in Laws 1869, chapter 13, section 4. The condition there made was that license should be issued if in the opinion of the commissioners "the business of such company is properly conducted, and such company is safe, reliable and entitled to public confidence, and not otherwise." While the phrase "the business of such company is properly conducted" is omitted in the act of 1870, its insertion in the act of 1869 shows that the legislature then had in mind something more than mere financial ability. It negatives whatever force there otherwise might be in the suggestion that up to 1870 legislation upon this subject related to finances only.

The omission of that phrase in 1870 was probably due to the evident fact that it was included in those which followed. It is not to be assumed that there was a purpose to discard any of the safeguards theretofore provided. The manifest design of the enactment was quite to the contrary.

The statute relating to lightning rod dealers (P. L., c. 160, s. 3) contains a more explicit statement of the qualifications required as follows: " . . . is safe and reliable as to assets, business standing and methods, and is entitled to confidence." The same thought is expressed in another form in the phrase "has the requisite capital and assets and is a safe, reliable company, entitled to confidence."

It is argued that section 12 of the act providing for licensing foreign insurance companies (Laws 1870, c. 1) proves that the words "safe, reliable and entitled to public confidence" relate to financial stability only. That section provides for proceedings to wind up a domestic company when upon complaint and examination the commissioner is "of opinion that the affairs of the company are in such condition as to render it unsafe or unworthy of public confidence." Financial unsoundness unquestionably shows that the company is unsafe and not entitled to confidence. But it by no means follows that unreliability may not exist in other respects.

In the revision of 1891, the phrase "unworthy of public confidence" was omitted from the foregoing provision as to winding up domestic companies (P. S., c. 168, s. 14), but the corresponding phrase was retained as to licensing foreign companies (P. S., c. 169, s. 6). This

plainly evidences an intent to differentiate the conditions laid down in the respective sections.

Comparison of the provisions of section 11, P. L., c. 275, with those relating to licenses for domestic companies furnishes added evidence that the terms "safe, reliable company, entitled to confidence," include more than financial standing. Local companies are required to conform to a certain standard of financial responsibility (P. L., c. 273, ss. 12, 13); but the provision as to license merely requires compliance with the law, and makes no reference to the qualities described in the law as to foreign companies.

A reading of these statutes as parts of an entire system of regulation inevitably leads to the conclusion that section 11 refers to more than matters of financial responsibility. It is designed to afford protection against unfair dealing.

*United States Fidelity &c. Co.* v. *Linehan*, 73 N. H. 41, contains nothing in conflict with this conclusion. The question presented in that case was one of financial responsibility alone. The discussion in the opinion is with reference to that subject, and does not undertake to express any view upon the present issue.

If it was not made to appear that the plaintiff companies were safe, reliable and entitled to confidence, in the ordinary acceptance of those terms, as herein indicated, the licenses were properly refused.

II. The burden of proof was upon the applicants for licenses. It was for them to show to the commissioner that the facts brought them within the terms of the statute. Lack of evidence upon an essential question would not entitle them to a finding thereon in their favor.

III. In this proceeding to review the action of the commissioner, the only question open for consideration is whether he acted contrary to law. With his finding of facts from evidence the court has no concern. It is immaterial that the court might have made a different finding. There is no appeal upon the facts, and a conclusion thereon, reached without error of law, is final. *Silverman* v. *Gagnon*, 74 N. H. 502; *State* v. *Cohen*, 73 N. H. 543.

No claim is made that the commissioner acted upon any ulterior or improper motive (*Attorney-General* v. *Littlefield*, 78 N. H. 185). The case merely presents the question whether he has found contrary to the conclusively established facts.

IV. The applications were denied because the commissioner "was convinced, by certain facts, that the plaintiffs were not entitled to confidence within the meaning of section 11 of chapter 275 of the Public Laws." He has also stated the reasons for his conclusion.

That is in accordance with the established procedure in such cases. Enough of the details of the proceedings below must be given to enable the court to ascertain whether there is error of law in the conclusion reached. *Broderick* v. *Hunt*, 77 N. H. 139; *Grafton &c. Company* v. *State*, 77 N. H. 490, 498.

His reasons are: "(1) that the plaintiffs had put into effect an unreasonable and discriminatory increase in rates on automobile coverage; (2) that the plaintiffs were members of the National Bureau of Casualty and Surety Underwriters, which exercised a combined control of said rates, and (3) that the plaintiffs had failed to furnish information requested by the defendant in connection with the investigation of said rates and the rate-making functions and methods of the plaintiffs and said Bureau."

The plaintiffs challenge the defendant's right to make the findings of fact involved in these reasons, or to rely upon the reasons given as ground for the general finding. They also say that no one of the reasons is sufficient when taken singly, and that there is no authority to treat them as of combined effect. Two findings of fact only are thus presented for consideration — fixing unreasonable rates and failure to furnish requested information.

The facts before the commissioner were these: In 1927 the legislature enacted a new motor vehicle insurance law. Laws 1927, *c.* 54. While this did not in terms make insurance compulsory, its provisions were such as to amount to practically the same thing, so far as applications for insurance were concerned. This law took effect June 1, 1927.

The bureau before named is a combination of insurance companies for the purpose of fixing rates. All the plaintiffs are members thereof, and are bound by an agreement to maintain the board rates in all states where there is no provision forbidding such combination. In December, 1927, the bureau prepared, and all the plaintiffs put into effect, new rates representing an increase of about twenty-three per cent in the charge for this kind of insurance in most parts of the state.

In January, 1928, the commissioner called the plaintiffs to a conference to consider the reasonableness of the rates and the combined control. At a meeting held February 10 and 11, 1928, the defendant requested statistical data, which the secretary of the bureau promised to furnish.

March 7, 1928, the bureau's manager wrote the defendant suggesting that his actuary come to New York to study the data. The defendant did not accede to this, and did not receive any data until

after this petition was brought. At the hearing thereon on March 30, a brief case full of papers was presented to the defendant, with a statement that it had taken eight girls six weeks to compile the same, and that the work was just completed. The plaintiffs' applications for renewals of their licenses from April 1, 1928, were denied on March 21.

An increase of nearly one-fourth in the price charged for an insurance contract might well be deemed unreasonable, in the absence of proof of sufficient occasion therefor. As before stated, the burden was on the plaintiffs to show all pertinent facts; and the absence of evidence to show their existence is as fatal to the plaintiffs as conclusive proof that the facts did not exist. Reasonableness of the increase not being shown, a finding that the increase was unreasonable was properly made. Apart from the rule as to the burden of proof, so great an increase, not satisfactorily accounted for, would warrant such a finding.

The second fact found by the commissioner, that the plaintiffs had failed to furnish information which he had requested, is manifestly warranted by the facts. The course of conduct pursued was quite sufficient to lead a reasonable mind to that conclusion. There was no error of law in the finding of these facts.

It is claimed that the reasons assigned by the commissioner for finding the plaintiffs not entitled to confidence, and for the consequent refusal to renew the plaintiffs' licenses, are insufficient. It is urged that no rate-making power, as to this class of insurance, has been conferred upon him. Such authority is given in terms as to several classes of insurance. Fire (P. L., c. 271, s. 14), workmen's compensation (P. L., c. 279, ss. 4, 5), and employers' mutual liability (P. L., c. 280, ss. 18, 26) rates are so governed. Regulation of this character is a well established policy of the state. It would not be illogical or unusual to also provide an indirect control, in cases where direct supervision was not given. And that is what has been done, in a measure, in this instance. In so far as rates are so unreasonable as to tend to show a purpose to take unfair advantage of the people of the state, the commissioner may consider them upon the issue whether the company is entitled to confidence.

It follows as a matter of course that he is empowered to inquire into the facts upon which the rates are based. More than that, the increase being so great as to furnish some evidence of unreasonableness in and of itself, and the commissioner having informed the plaintiffs that he had the question under consideration, it was incum-

bent upon the plaintiffs to clear up the situation of their own motion and without any demand from the commissioner. It was for them, and not for him, to make out a case. The evidence was in their exclusive possession, and failure to produce it seasonably was a significant fact.

Consideration of the bureau combination as an element tending to prove unworthiness of confidence is also objected to. It is said that the anti-combination provision found in the statutes (P. L., c. 275, s. 14) cannot be relied upon here because it applies only to insurance upon property, and because it violates the guaranties of the federal constitution, in that it discriminates against foreign companies. Assuming that the statute is either inapplicable or invalid, the question is presented whether such conduct might not be considered as an element of the conduct which was to be scrutinized by the commissioner. It was an integral part of what had been done by the plaintiffs in making an efficient arrangement to enforce the new rates, and as such was to be taken into account in appraising the character of their conduct as a whole.

Whether the anti-combination statute or the anti-monopoly law (P. L., c. 168) might be taken into consideration by the commissioner as evidence of the policy of the state as to combinations in general, although not directly applicable to the case in hand, is a question which is not presented. The commissioner does not put his conclusion upon any such foundation.

It is further urged that the three reasons assigned for the commissioner's conclusion must be dealt with separately. The position is plainly untenable. They are related parts of a course of conduct, which it was his duty to pass upon as a whole. Motive, opportunity, design, preparation, capacity, the fact accomplished and concealment, are elements familiarly linked together in another department of the law. The persuasive effect of such combination is not less here than there. In each instance the question is one of logical deductions, and the same processes of reasoning may be employed in both.

It is not understood that the plaintiffs deny that upon the foregoing view of the case there was sufficient ground for the finding that the plaintiffs were not entitled to confidence. The need of motor vehicle owners, created by the act of 1927, and the monopolistic combination of the plaintiffs to control the price of what such owners must purchase, provided an occasion where extortion would be an easy matter, if there were no public control. The ensuing large increase in the price charged and failure to produce proof justifying the same, supply all

the added elements necessary to warrant a finding of an attempt to take an unfair advantage of the situation. Such conduct fully justifies the ultimate finding that it was not shown that the plaintiffs were entitled to confidence.

V. The question whether the superior court has jurisdiction to try out the facts which were found by the commissioner is also transferred. It has no such jurisdiction. It is entirely immaterial whether that court does or does not agree wth the commissioner in his views as to what the evidence proves. Moreover, the question is not what the plaintiffs might be able to prove now, but what was shown before the commissioner. As stated earlier in this opinion, from his findings of fact, legally made, there is no appeal. *Silverman* v. *Gagnon*, 74 N. H. 502; *State* v. *Cohen*, 73 N. H. 543.

VI. The superior court made an order that the defendant issue the licenses prayed for, to terminate April 1, 1929, upon the applicants' filing stipulations, among others, to restore the old rates if the event of this proceeding should be adverse to them. The prayer of the bill was only for an injunction *pendente lite*. The defendant moved that this order be limited accordingly, and excepted to a denial of the motion.

This exception must be sustained. The only justification for the issue of a temporary injunction is the preservation of rights until the controversy can be determined. The process has been well characterized as the issue of execution before judgment (*Amelia &c. Company* v. *Company*, 123 Fed. Rep. 811), or, more strongly, as "somewhat like judgment and execution before trial." 14 R. C. L. 312. It is manifest that any attempt to in any way extend its efficiency beyond the period during which the right remains in dispute is wholly unwarranted. Recognition of this limitation is found in our earliest rules for chancery practice (Rules in chancery, 38 N. H. 612, rule 35), and has continued to the present time. (Rules of the superior court, 78 N. H. 707, rule 131.)

As the order to issue the licenses for the term named was beyond the jurisdiction of the court, it follows that the licenses issued thereunder give the plaintiffs no right to continue to do business in the state after the injunction has been dissolved.

It being established that the commissioner had legal ground to refuse to issue the licenses, the question, what is to be done in the premises when judicial control of his freedom of action is removed, is for him to determine. Whether the stipulated restoration of the old rates will so far remove the stigma of past conduct and purposes

that the plaintiffs will be deemed to be worthy of confidence, is to be decided by him and not by the court. *Attorney-General* v. *Littlefield*, 78 N. H. 185.

As the interlocutory mandatory injunction was erroneously issued, it should be dissolved. The petition should be dismissed, unless an order is requested for the distribution of the fund held by the commissioner.

*Case discharged.*

All concurred.