CARL T. JORDAN ET UX V. STATE BOARD OF INSURANCE.

No. A-7550. Decided April 6, 1960.
(334 S.W. 2d Series 278)

*F. L. Kuykendall,* of Austin, for appellants.

*Will Wilson,* Attorney General. *Fred B. Werkenthin* and *Wallace P. Finfrock,* Assistants to the Attorney General, for appellee.

MR. JUSTICE NORVELL delivered the opinion of the Court.

This is a direct appeal brought to this Court in accordance with the provisions of Article 5, section 3-b of the Texas Constitution, Article 1738a, Vernon's Ann. Texas Stats., Rule 499a, Texas Rules of Civil Procedure. Appellants, Carl B. Jordan and wife, Ella Mae Walls Jordan, assert that the only question involved is the constitutionality of Article 1.14, section 3 of Vernon's Ann. Texas Insurance Code which provides in part that:

"The Board may inquire into the competence, fitness and reputation of the officers and directors of each carrier. If, after inquiry, and based on substantial evidence, it shall appear to the Board that such officers and directors, or any of them, *are not worthy of the public confidence,* it shall give such carrier notice in writing of its intention to refuse the application for Certificate of Authority, or to revoke the certificate once granted, stating specifically why the Board intends such action, and the place and time for hearing by the Board, not sooner than ten (10) days nor later than twenty (20) days thereafter.

"After notice and hearing, the Board shall forthwith record in its official minutes its findings and order, which shall be subject to full review in a suit filed in a District Court in Travis County." * * *

The statute refers to an inquiry and order by the Board of Insurance Commissioners. By amendment adopted in 1957, this duty devolved upon the Commissioner of Insurance subject to the supervisory authority of the State Board of Insurance, Acts 1957, 55th Leg., p. 1454, ch. 499, Articles 1.02 et seq., Vernon's Ann. Texas Ins. Code. This 1957 statutory change accounts for the references in this opinion to orders of the Board of Insurance Commissioners, the Commissioner of Insurance and the State Board of Insurance.

The trial judge held that the questioned statute was constitutional and that the orders entered by the Board of Insurance Commissioners, the Commissioner of Insurance and State Board of Insurance complained of by appellants were valid. Such or-

ders were based upon a finding that appellants were "not worthy of public confidence."

Essentially it is appellants' contention that Article 1.14, section 3 of the Insurance Code is invalid because it lacks sufficiently definite standards whereby the competence, fitness and reputation of an officer or director of an insurance company may be determined and thus vests an unbridled discretion in the regulatory body contrary to the due process clauses of the Texas Constitution (Article 1, section 19), and the Fourteenth Amendment to the Constitution of the United States.

Briefly stated, the factual background of this litigation is as follows:

By order dated March 7, 1956, the Board of Insurance Commissioners of the State of Texas gave notice to the John L. Hammon Life Insurance Company that it was the intention of the Board to revoke its certificate of authority. The Board tentatively found that some of the officers and directors of said company, including Carl B. Jordan, were not worthy of public confidence.

At a further hearing held on March 22, 1956 the Board finally revoked the company's certificate because of the incompetency of its officers and directors and the company went out of existence.

About August 1, 1957, Carl B. Jordan was offered employment with the Great United Life Insurance Company as Executive Vice-President and thereafter filed an application with William A. Harrison, Commissioner of Insurance, requesting that the order of March 22, 1956 be amended and modified so that he could accept employment with the Great United Life Insurance Company without jeopardizing the company's certificate of authority.

On December 10, 1957 the Commissioner notified the Great United Life Insurance Company of his intention to revoke the certificate of authority because both appellants, Carl B. Jordan and Ella Mae Walls Jordan, were serving as officers and directors of the company, unless cause was shown why such action should not be taken.

On January 22, 1958 the Commissioner found that it was unnecessary to revoke the certificate of authority of the com-

pany as neither appellants, Carl B. Jordan or Ella Mae Walls Jordan, were then connected with the company.

On February 12, 1958 the Commissioner entered an order refusing to modify the order of the Board of Insurance Commissioners dated March 22, 1956.

Appellants then requested the State Insurance Board to review the orders of the Commissioner dated January 22, 1958 and February 12, 1958 asserting that as they had been forced to resign their positions with the Great United Life Insurance Company, they were directly and adversely affected by such actions and rulings of the Commissioner. Article 1.04(d), Insurance Code.

The Board of Insurance confirmed the action of the Insurance Commissioner whereupon this suit was filed in the District Court of Travis County.

Upon the trial, the Board of Insurance challenged the right of appellants to maintain this suit by urging a plea in abatement. This plea was overruled by the trial judge and a portion of appellee's brief is devoted to an alternative argument that the plea should have been sustained and this cause dismissed. However, the final order of the trial court and the one from which this appeal was taken is a judgment that plaintiffs take nothing against defendant and was based upon the express holding that Article 1.14, section 3 of the Insurance Code was constitutional and the question of the correctness of that holding is the controlling issue in the case.

1 The case was tried upon stipulations which set out the findings of the boards involved, as well as those of the Insurance Commissioner. Such findings support the conclusion that appellants were "not worthy of public confidence." In the District Court no attempt was made to attack these findings by evidence outside the stipulations. Accordingly, the trial court's holding must be sustained. We likewise conclude that the statute is constitutional and it follows that the judgment of the trial court should be affirmed.

2 Article 1.14 section 3 of the Insurance Code as amended in 1957 confers broad and plenary powers upon the Commissioner of Insurance and the Board of Insurance. Subject to the supervisory control of the Board, the Commissioner of Insurance is vested with the authority to inquire into the competence, fitness

and reputation of the officers and directors of any insurance carrier operating within this state, and upon a finding that any such officer or director is "not worthy of public confidence," refuse the carrier's application for a Certificate of Authority or revoke such certificate if theretofore issued, unless such officer or director be removed by the insurance carrier. While the term "not worthy of public confidence" is broad and undoubtedly encompasses a multitude of factors, it is no more extensive than the public interest demands. Further the idea embodied within the phrase is reasonably clear and hence acceptable as a standard of measurement. And in this lies the true constitutional test. A court may act with reasonable certainty in reviewing a finding and while many elements, such as failure to meet contractual obligations, the record of past business failures, unfavorable personal notoriety and the like may enter into the conclusion that one is unworthy of public confidence, it does not necessarily follow that an administrative board must first establish detailed rules in order to carry out its statutory duty to make sure that the insurance companies of this state have competent officers and directors. In the recent case of Southwestern Savings & Loan Association of Houston, Texas v. J. M. Falkner, 160 Texas 417, 331 S.W. 2d 917, this Court held that the failure of the Banking Commissioner to promulgate rules and regulations relating to the opening of branch offices of building and loan associations did not dispense with the necessary approval of the Commissioner for the opening of such offices. The adoption of rules was not regarded as a prerequisite to the exercise of authority; the statutory standard — the promotion of the public convenience and advantage — being applicable and constitutionally sufficient for a definite standard.

Professor Davis in his "Administrative Law Treatise," section 2.03, gives numerous illustrations of phrases employing general terms which have been held sufficient as administrative standards and we quote therefrom:

"[T]he standards the Supreme Court [of the United States] has held adequate include 'just and reasonable,' 'public interest,' 'unreasonable obstruction' to navigation, 'reciprocally unequal and unreasonable,' 'public convenience, interest, or necessity,' 'tea of inferior quality,' 'unfair methods of competition,' 'reasonable variations,' 'unduly or unnecessarily complicate the structure' of a holding company system or 'unfairly or inequitably distribute voting power among security holders.' "

See, also Annotation 79 L. ed. 474, 1.c. 487 following report

of Panama Refining Company v. Ryan, 293 U.S. 388, 55 S. Ct. 241, 79 L. ed. 446.

Closely in point upon the facts is the decision of the Supreme Court of the United States in Hall v. Geiger-Jones Co. (1916), 242 U.S. 539, 37 S. Ct. 217, 221, 61 L. ed. 480 which involved the validity of the Blue Sky Law of the State of Ohio. The issue in the case as stated by the Court related to the statutory supervisory power delegated to the Superintendent of Banks and Banking:

"It [the objection] centers in the provision that requires the commissioners, as a condition of a license, 'to be satisfied of the good repute in business of such applicant and named agents,' and in the power given him to revoke the license or refuse to renew it upon ascertaining that the licensee 'is of bad business repute, has violated any provision of the act, or has engaged or is about to engage, under favor of such license, in illegitimate business or fraudulent transactions.' It is especially objected that, as to these requirements, no standard is given to guide or determine the decision of the commissioner. Therefore, it is contended that the discretion thus vested in the commissioner leaves 'room for the plan and action of purely personal and arbitrary power.' "

The state statute was upheld against the attack made and the court was of the opinion that there was nothing "recondite in a business reputation or its existence as a fact which should require much investigation."

In Marrs v. Matthews (1925), Texas Civ. App., 270 S.W. 586, wr. ref., a statute was upheld which empowered the State Superintendent of Public Instruction to cancel a teaching certificate upon a finding that the holder thereof was "a person unworthy to instruct the youth of this state."

In Aetna Casualty Ins. Co. v. Sullivan (1928), 83 N.H. 426, 143 A. 687, 690, the Supreme Court of New Hampshire considered a statutory provision that provided that the license of a foreign insurance company to do business within the State should be renewed "so long as the company shall comply with the requirements of the law and the commissioner shall regard it as safe, reliable and entitle to confidence."

In discussing the provision the court said:

"It is true that the test is not a mathematical one: but it may well have been regarded by those who established it as a very practical one, and well calculated to protect the people of the state from the supposed abuses above referred to. The commissioner could ascertain, as the ordinary individual could not, whether the company was honorable in its dealings and whether it offered fair or unfair contracts. The measure was enacted for the protection of the people, rather than for the benefit of the companies. Past experience was believed to show the need for such protection, and the statute is to be construed from that point of view.

\*   \*   \*   \*

"The court has not heretofore found it impossible to apply the test of worthiness of public confidence. 'Character, no less than medical education, skill, and experience is, within the meaning of the statute, a qualification for a competent physician or surgeon. One who does not possess the requisite qualifications cannot be worthy of public confidence.' Gage v. Censors, 63 N.H. 92. 94, 56 Am. Rep. 492. Power to grant a license upon a finding that the applicant is a suitable person may be conferred. State v. Cohen. 73 N.H. 543, 63 A. 928; Diepenbrock v. State Board of Health, 82 N.H. 451, 135 A. 531."

The citation of further authority is deemed unnecessary. We are here concerned with the regulation of an enterprise which affects the public interest, that is, with licenses and cancellations, administrative directives and controls. and the like. The Legislature in using the phrase. "not worthy of public confidence" was not attempting to define a crime.

As above pointed out, the District Judge overruled the Board's plea in abatement and held that appellants were entitled to maintain this suit which they contended was an appeal from orders of the State Board of Insurance under the provisions of Article 1.04 (f) of the Insurance Code which provides that:

"If any insurance company or other party at interest be dissatisfied with any decision, regulation. order, rate, rule, act or administrative ruling adopted by the State Board of Insurance, such dissatisfied company or party at interest after failing to get relief from the State Board of Insurance, may file a petition setting forth the particular objection to such decision \* \* \* in the District Court of Travis County, Texas, and not elsewhere, against the State Board of Insurance as defendant."

It was evidently the opinion of the trial judge that appellants were parties whose interests were affected by the order of December 10, 1957 wherein the Commissioner held that they were not worthy of public confidence and so notified the Great United Life Insurance Company. This order became final as a matter of course insofar as appellants were concerned when the Commissioner entered his order finding that it was unnecessary to suspend the charter of Great United Life Insurance because appellants had been discharged from their positions with the company. Appellants then requested and were granted a review of such order by the State Board of Insurance as provided for in Article 1.04(d) of the Insurance Code. While the Board expressed the opinion that appellants, after their dismissal by the insurance company, had no further standing as persons affected by a ruling or action of the Commissioner of Insurance under said Article 1.04(d), it nevertheless held a public hearing on March 6, 1958 (at which appellants were represented by counsel) and specifically found from the evidence there adduced that appellants and each of them were "not worthy of the public trust and confidence to act as officers or directors of an insurance company in this State." The action of the Commissioner was accordingly confirmed, whereupon suit was filed in the District Court with the result noted.

3 There has been no denial of procedural due process in this case. Appellants have had both an administrative and judicial review of the Comissioner's adverse finding. Opp. Cotton Mills, Inc. v. Administrator, 312 U.S. 126, 657, 61 S. Ct. 524, 85 L. ed. 624; Industrial Accident Board v. O'Dowd, 157 Texas 432, 303 S.W. 2d 763; English Freight Co. v. Knox, Texas Civ. App., 180 S.W. 2d 633, wr. ref., w.o.m.

The judgment of the trial court is affirmed.

Opinion delivered April 6, 1960.