

# The Attorney General of Texas

April 1, 1981

ARK WHITE
ttorney General

reme Court Building
. Box 12548
sin, TX. 78711
/473-2501

7 Main St., Suite 1400
las, TX. 75201
742-8944

4 Alberta Ave., Suite 160
Paso, TX. 79905
1/533-3484

20 Dallas Ave., Suite 202
xuston, TX. 77002
3/650-0666

6 Broadway, Suite 312
bbock, TX. 79401
6/747-5238

09 N. Tenth, Suite B
cAllen, TX. 78501
12/682-4547

00 Main Plaza, Suite 400
an Antonio, TX. 78205
12/225-4191

n Equal Opportunity/
ffirmative Action Employer

Honorable Chet Brooks, Chairman
Senate Committee on Human Resources
Archives Building
Austin, Texas 78711

Opinion No. MW-318

Re: Delegation of medical acts
by means of standing orders

Dear Senator Brooks:

You first ask:

> In the absence of statutory language permitting delegation of medical acts, does the Board of Medical Examiners have the authority to promulgate rules relating to the delegation of medical acts to non-physicians?

Article 4512a, V.T.C.S., which was enacted by the sixty-sixth legislature, requires the Board of Medical Examiners to adopt standards regulating the extent to which a physician's responsibilities may be delegated to a physician assistant. No other provision of the Medical Practice Act speaks to the delegation of medical acts. However, authority for such delegations and for board regulation thereof can be found implicit in the Medical Practice Act and in statutes governing other healing arts.

The board may cancel, revoke, or suspend the license of any physician who permits another to practice under his license or who aids the practice of medicine by an unlicensed person. V.T.C.S. arts. 4505(12), (15); 4506. In exercising this authority, the board must distinguish between lawful delegations of medical acts and delegations which constitute grounds for disciplinary action against the physician. In Thompson v. Texas State Board of Medical Examiners, 570 S.W. 123 (Tex. Civ. App. - Tyler 1978, writ ref'd n.r.e.), two physicians appealed from license revocations for allowing unlicensed persons to practice acupuncture in their offices. The court upheld a board policy statement which prohibited physicians from delegating authority to perform acupuncture to unlicensed persons. It noted that the board condoned the use of unlicensed persons to administer innoculations and draw blood, and held that the board could constitutionally treat the administration of acupuncture differently. Cf. Andrews v. Ballard, C.A. No. H-77-999 (S.D. Tex. July 9, 1980) (restriction against delegation of acupuncture is unconstitutional). The board may promulgate rules identifying the medical acts which may and may not be delegated. See V.T.C.S. art. 4509; Attorney General Opinion H-1093 (1977).

Statutes regulating other health professions recognize that physicians may delegate medical acts to other persons. For example, the statute regulating physical therapists does not apply to employees performing services under the direct supervision of a physician in a hospital. V.T.C.S. art. 4512e, S6. A licensed physician may treat injuries by means of physical therapy, article 4512e, section 6, V.T.C.S., and he may delegate his authority to do so to someone not licensed as a physician or a physical therapist. See Attorney General Opinion H-368 (1974). Similar exemptions for acts done by an unlicensed person at the direction of a licensed physician are found in other statutes. See V.T.C.S. art. 4528 (nursing); art. 4552-5.17 (optometry). These provisions indicate a legislative assumption that physicians could delegate medical acts involving treatment to non-physicians. The Board of Medical Examiners may regulate such delegations under its broad authority to regulate the practice of medicine. V.T.C.S. art. 4509.

You ask several questions about rules promulgated by the Board of Medical Examiners on the delegation of health care tasks to qualified non-physicians. Rules 386.17.00.001-.005, 5 Tex. Reg. 1338, 1339, 1390 (1980). Rule .004 requires that standing delegation orders be "in keeping with sound medical practice." Rule .005 prohibits the use of standing delegation orders "which authorize the exercise of independent medical judgment or treatment." A physician who violates this prohibition is subject to having his license suspended or revoked. The terms "sound medical practice" and "independent medical judgment" are not defined. You ask whether the use of these undefined terms renders the rules unconstitutionally vague for failing to provide physicians adequate notice of what acts can and cannot be delegated by standing delegation orders. For the reasons stated below, we do not believe these rules are thereby rendered unconstitutionally vague.

The rules of an administrative agency will be construed in the same manner as are statutes. Railroad Commission v. Shell Oil Co., 161 S.W. 2d 1022 (Tex. 1942). They will be interpreted in a manner to uphold them, if this can reasonably be done. Id. at 1026.

The courts have upheld language in the Medical Practices Act stating grounds for license revocation, despite claims that it was void for uncertainty. A predecessor of article 4505 authorized the board to refuse or revoke a license for conviction of a felony, commission of a crime involving moral turpitude or "other grossly unprofessional or dishonorable conduct of a character likely to deceive or defraud the public." This language was not void for uncertainty because the legislature intended the conduct it described to be similar in nature to the crimes referred to in the same provision. Morse v. State Board of Medical Examiners, 122 S.W. 446 (Tex. Civ. App. 1909, writ ref'd). Moreover, the use of general language was necessary to fully protect the public, because of the impossibility of enumerating in detail every distinct act intended to be prohibited. Berry v. State, 135 S.W. 631 (Tex. Civ. App. 1911, writ ref'd). See also Jordan v. State Board of Insurance, 334 S.W. 2d 278, 280 (Tex. 1960), ("not worthy of the public confidence" an acceptable standard of measurement).

In our opinion, the rules are not rendered unconstitutionally vague by their use of the undefined terms "sound medical practice" and "independent medical judgment."

These terms receive some definition from the enumeration in Rule .004 of services, which may be provided by non-physicians under standing orders. In addition, the rules must be read against the background of the statute they implement. The legislature enacted the Medical Practice Act in exercise of its power to protect the public health. Ex parte Halsted, 182 S.W. 2d 479 (Tex. Crim. App. 1944). The requirement that delegations of health services be made "with due regard for the safety of the patient and in keeping with sound medical practice" serves to protect the public health, and should be interpreted by practitioners in light of that goal. What constitutes "sound medical practice" will have to be decided on the facts of each case, just as malpractice, a ground for license revocation, must be identified on a case-by-case basis. See V.T.C.S. art. 4512. However, those terms are not therefore void for vagueness.

Rule .005 states that a physician who uses standing orders which authorize the exercise of independent medical judgment shall be subject to discipline under article 4505(12) and (15), the provisions on permitting another to practice under his license and on aiding the practice of medicine by an unlicensed person. The term "independent medical judgment" is used to identify impermissible delegations of medical acts. We believe it is used to interpret the statutory definition of the practice of medicine. When read together with the statute, we do not believe this term is void for vagueness.

Rule .004 of the rules promulgated by the Board of Medical Examiners enumerates acts which can be authorized under standing delegation orders. Several of these are identified in Attorney General Opinion H-1295 (1978) or article 4518(5) as acts of professional nursing. Your next several questions relate to the possibility that the Board of Medical Examiners may be attempting to regulate the practice of nursing. You point out that the supervision of nursing and nursing practices is the practice of professional nursing. V.T.C.S. art. 4518, §5(d).

> Question 4: In light of the fact that article 4518(5) identifies the supervision of nursing as the practice of professional nursing, does the delegation and supervision of nursing acts constitute the practice of medicine as defined by articles 4510 and 4510a, so as to be subject to regulation by the Board of Medical Examiners?

This office noted in Attorney General Opinion H-27 (1973) that there is some overlap between the practice of medicine and the practice of nursing. Much of what a professional nurse's license authorizes the holder to do could also be done by a physician under his license, such as observing the sick, maintaining health and preventing illness, administering medicines and treatments. Cf. Baker v. State, 240 S.W. 924 (Tex. Crim. App. 1921) (licensed physician can practice any branch of medicine including optometry). Thus, the health services in question are not exclusively acts of professional nursing. A physician may perform them under his license and in appropriate cases may delegate their performance to persons licensed neither as a physician nor as a professional nurse. He has delegated and supervised medical acts, subject to regulation by the Board of Medical Examiners. Although the same acts might also be nursing acts, the physician delegating those acts to an unlicensed person has not engaged in the supervision of nursing.

Your next three questions deal with the exemption found in article 4528 and we will answer them together.

Question 5: Does either the Board of Medical Examiners or the Board of Nurse Examiners have authority to regulate professional nursing care provided under that part of article 4528 which exempts 'acts done under the control or supervision or at the instruction of one licensed by the Texas Board of Medical Examiners'?

Question 6: Does either the Board of Medical Examiners or the Board of Nurse Examiners have authority to regulate unlicensed persons providing professional nursing care under that exemption?

Question 7: Does either the Board of Medical Examiners or the Board of Nurse Examiners have authority to regulate physicians controlling, supervising or instructing unlicensed persons providing professional nursing care under that exemption?

Article 4528 of course exempts "acts done under the control or supervision or at the instruction of one licensed by the Texas State Board of Medical Examiners." The Board of Nurse Examiners has no jurisdiction over an unlicensed person functioning within this exemption.

The Board of Medical Examiners has the power to regulate the supervising physician who delegates the performance of health services. See Thompson v. Texas State Board of Medical Examiners, supra. It could indirectly regulate the activities of the unlicensed person by determining what medical acts may be delegated to him. If the unlicensed person performs nondelegable medical acts, he would be practicing medicine without a license. The Board of Medical Examiners could sue him to enjoin his unlawful practice of medicine. V.T.C.S. art. 4509. See Ashby v. Board of Medical Examiners of Texas, 142 S.W. 2d 371 (Tex. Civ. App. - Austin 1940, writ ref'd). The unlicensed person working under a physician's supervision is therefore accountable to the board when he performs medical services which may not be delegated.

You next ask:

Question 8: Is the physician controlling, supervising or instructing unlicensed persons providing professional nursing care under that exemption legally liable for the acts of those persons?

In our opinion, the supervising physician may have legal liability for the acts of these persons. The liability of a physician for the negligence of others is determined by examining the principles of agency law. Sparger v. Worley Hospital, Inc., 547 S.W. 2d 582 (Tex. 1977). The master is liable for the torts of his servant committed in the course of his employment. Newspapers, Inc. v. Love, 380 S.W. 2d 582 (Tex. 1964). The master's vicarious liability for his employee's torts is based upon his right to control

the details of the work. Id. The supervising physician need not be the actual employer of the servant in order to be vicariously liable for his torts, so long as he has the right to control the details of the work. Sparger v. Worley Hospital, Inc., supra. The physician who controls, supervises, or instructs unlicensed persons providing nursing care under the article 4528 exemption has the right to control the details of their work. The unlicensed person can perform nursing acts only with a physician's cooperation, which may be conditioned upon control of the details of the work. A prior opinion of this office stated that article 4528 required the responsible physician to personally assume control and supervision of the employee or instruct him in what is to be done, and remain reasonably available to see the nursing acts are properly performed. Attorney General Opinion H-395 (1974). Thus, the supervising physician not only has the power to control the details of the work, but he is responsible for seeing that it is properly done. In enacting this exemption, the legislature may have had in mind that the protection to the public afforded by a nurse's license was unnecessary where a licensed physician was responsible for the performance of nursing acts. We believe that physicians supervising unlicensed persons under the article 4528 exemption will ordinarily be liable for the acts of those persons.

Your next three questions relate to portions of Rule 386.17.00.004, which reads in pertinent part as follows:

> .004. Scope of Standing Orders. Providing the authorizing physician is satisfied as to the ability and competence of those for whom the physician is assuming responsibility, and with due regard for the safety of the patient and in keeping with sound medical practice, standing delegation orders may be authorized for the performance of duties which do not require the exercise of independent medical judgment and may include authority to undertake the following:
>
> . . . .
>
> (4) the administration or providing of drugs ordered by direct personal or voice communication by the authorizing physician who shall assume responsibility for the patient's welfare, providing such administration or provision of drugs shall be in compliance with other state or federal laws, and providing further that presigned prescriptions shall not be utilized by the authorizing physician except under the following conditions:
>
> (A) the prescription shall be prepared in full compliance with Section (2)g, Article 4476-14, Vernon's Annotated Civil Statutes (the Texas Dangerous Drug Law), except for the inclusion of the name of the patient and date of insuance;
>
> (B) the prescription shall be for one of the following classes or types of drugs:

      (i)   oral contraceptives;
      (ii)  diaphragms and contraceptive creams and jellies;
      (iii) topical anti-infectives for vaginal use;
      (iv) oral anti-parasitic drugs for treatment of pin-worms;
      (v)  topical anti-parasitic drugs;
      (vi) antibiotic drugs for treatment of venereal disease;

(C) the prescriptions may not be issued for any controlled substance;

(D) the providing of the drugs shall be in compliance with the Texas Pharmacy Act and rules adopted by the Texas State Board of Pharmacy;

(5) the administration of immunization vaccines providing the recipient is free of any condition for which the immunization is contraindicated;

(6) the providing of information regarding hygiene and the administration or providing of medications for health problems resulting from a lack of hygiene, including the institution of treatment for conditions such as scabies, ringworm, pinworm, head lice, diaper rash, and other minor skin disorders provided the administration or providing of drugs adheres to the provisions of Rule .004(4) of this rule;

(7) the provision of services and the administration of therapy by public health departments as officially prescribed by the Texas Department of Health for the prevention or treatment of specific communicable diseases or health conditions for which the Texas Department of Health is responsible for control under state law;

(8) the issuance of medications which do not require a prescription (over the counter medications) for the symptomatic relief of minor illnesses provided that such medications are packaged and labeled in compliance with state and federal laws and regulations. 5 Tex. Reg. 1390 (1980).

You ask:

Question 9: To the extent sections (4), (5), (6), (7) and (8) of Rule .004 permit the providing of medications without a prescription for the individual patient, did the Board of Medical Examiners exceed its statutory authority?

As will be shown by the discussion below, we believe that section (4) does not permit the providing of medications without a prescription for the individual patient. In Attorney General Opinion H-1295 (1978), this office stated that as a general rule, "the provision of medication pursuant to standing orders, without a physician's prescription for the individual patient, would constitute the practice of medicine. . . ." The opinion did not address whether some medications might provide an exception to the general rule.

We interpret section (4) of Rule .004 as requiring the physician to decide that a particular course of medication should be applied to an individual patient. In cases where the physician's agent was to administer the medication to the patient, no written prescription would be needed, and the physician's verbal order to administer the substance could constitute a "prescription for the individual patient" as required by Attorney General Opinion H-1295. Prescriptions may, in some cases, be phoned into a pharmacy by a physician's agent, see article 4476-14, section 2(g), V.T.C.S., and the physician in such cases may verbally instruct his agent to make the call. Section (4) does permit a physician to order medication without having seen the patient. This rule is broad and one can easily posit illegal applications of it. For instance where the physician could not diagnose the illness and prescribe medication without seeing the patient and the assistant actually decided what medication to use, the assistant would be practicing medicine without a license. However, there are many permissible applications, for example, where the physician can make a diagnosis based on test reports and examination findings, or where the patient has been under his care previously and needs treatment for a recurring condition. We find no absolute prohibition against a physician's prescribing for someone without seeing him, although under some circumstances this could constitute unprofessional conduct or malpractice. Cf. Simmons v. State, 353 S.W. 2d 215 (Tex. Crim. App. 1962) (prescription obtained through a telephone call).

Therefore, we believe that section (4) of Rule .004 does not permit the providing of medications without a prescription for the individual patient. Section (6) of Rule .004 requires that the administration of drugs adhere to the provisions of Rule .004(4); thus section (6) does not permit the providing of medications without a prescription for the individual patient.

Section (5) of Rule .004 permits the administration of immunization vaccines providing the recipient is free of any condition for which the immunization is contraindicated. No provision is made for prescription for individual patients. We believe a qualified non-physician may administer immunizations even though his supervising doctor has not made individual determinations as to each person's need for the vaccine. The non-physician has not engaged in the practice of medicine as defined by article 4510 and 4510a. He has not diagnosed or treated any disorder, physical deformity, or injury. The immunization is given to a healthy person, to prevent him from getting a disease. We believe a non-physician may also determine that a person is free from conditions for which vaccine is contraindicated, if he can obtain that information by questioning the person without having to diagnose any illness himself.

The administration of a prescription vaccine must comply with the Dangerous Drugs Act, article 4476-14, V.T.C.S. The act regulates the possession and distribution

of prescription drugs as well as other specifically named drugs. Section 2. It permits physicians and their agents and employees to possess dangerous drugs for use in their practice or the performance of their official duties. Thus, a non-physician could administer vaccine in compliance with the Dangerous Drug Act if he did so as the agent or employee of a physician in his practice or in the performance of official duties.

Section (7) of Rule .004 applies to a broad range of health services provided under the authority of the Department of Health. Unlike section (4), this section would permit non-physicians to provide medications to a patient without a doctor's prescription. There certainly are legal applications of this rule, such as the provision of prescription immunizations.

However, public health departments do provide services and treatment which could not legally be provided on standing orders without a doctor's prescription. Public health departments treat tuberculosis, see article 4437a, section 6A, V.T.C.S., but we do not believe every kind of treatment for that disease may be administered without a doctor's prescription. Rule .004, however, limits the use of standing delegation orders to the performance of duties which do not require the exercise of independent medical judgment. The inclusion of this limitation is necessary to insure that Rule .004 is consistent with the Medical Practice Act, and that the Board of Medical Examiners did not exceed its statutory authority by enacting it.

Section (8) involves only over-the-counter drugs; thus the prohibitions of the Pharmacy Act and the state drug laws are not relevant here. The provision of non-prescription drugs to treat a disease, disorder, or injuries for compensation may constitute the practice of medicine. See V.T.C.S. art. 4510.

> Question 10: Is the use of presigned prescriptions permitted by the pharmacy and drug laws of this state and if so, does the Board of Medical Examiners or the Pharmacy Board have the authority to regulate the use of such presigned prescriptions?

No provision of the pharmacy or drug laws of this state prohibits the use of a presigned prescription. Each board would have some authority to regulate the use of presigned prescriptions by its practitioners, for example to prevent use of unsigned prescriptions under circumstances that would constitute unprofessional conduct or a violation of the law. V.T.C.S. art. 4505, 4506, 4542a, §12. Rule .004(4) of the board's rules allows for the administration or providing of drugs under certain conditions. You ask:

> Question 11: Under the drug laws and Pharmacy Law as currently enacted, what acts can a non-physician legally do that could be said to constitute the 'providing' of drugs?

To "provide" is commonly used interchangeably with supply or furnish. Webster's Third New International Dictionary 1827 (1961).

Article 4542a, V.T.C.S., states in part:

> It shall be unlawful for any person who is not a registered pharmacist under the provisions of this Act to compound, mix, manufacture, combine, prepare, label, sell, or distribute at retail or wholesale any drugs or medicines, except in original packages. . . . [H]owever, . . . nothing in this Act shall apply to or interfere with any licensed practitioner of medicine. . . who shall supply his or her patients, as a physician, dentist, or chiropodist, and by them employed as such, with such remedies as he or she may desire. . . . Section 8.

Under this provision, a non-physician may provide drugs or medicines in original packages.

The Dangerous Drugs Act defines prescription to include a telephone order, in cases of emergency, by a physician's agent designated in writing to the pharmacist. V.T.C.S. art. 4476-14, $2(g)$. A non-physician under this language may provide drugs to a patient by calling in a prescription. The agents and employees of physicians may also possess dangerous drugs for use in the practice. V.T.C.S. art 4476-14, $4.

The Controlled Substances Act permits the administration of a controlled substance to a patient by a physician's agent or employee when done in the physician's presence. V.T.C.S. art. 4476-15, $$1.02(1)(A), 3.03. In addition, the agent or employee of a registered dispenser of a controlled substance may possess controlled substance if acting in the usual course of business.

Other statutes authorize non-physicians to "provide" drugs. A nurse may administer medications or treatments as prescribed by a licensed physician or dentist. V.T.C.S. art. 4518, $5(c). See Attorney General Opinions H-1295 (1978); H-737 (1975). Someone who is not licensed as a nurse may administer medications under the control and supervision of a physician. V.T.C.S. art. 4528; Attorney General Opinion H-27 (1973).

Rule .003 of the rules provides as follows:

> .003. Exclusion from Rules. These rules shall not be applicable nor shall they restrict the use of pre-established programs of health care, nor shall they restrict physicians from authorizing the provision of patient care by use of pre-established programs under the following circumstances: 5 Tex. Reg. 1339 (1980).

The circumstances listed include, for example, care rendered as part of disaster relief when charges for the services are not made, and care rendered by an institution with an organized medical staff which has approved standing delegatees orders. You ask the following questions about these exclusions:

Question 12:  Is Rule .003 to be construed as a positive grant of authority to use 'standing delegation orders,' 'standing medical orders' and other 'pre-established health care programs' in the circumstances listed and if so, what are the legal restrictions, if any, on the use of 'standing delegation orders,' 'standing medical orders' and other 'pre-established health care programs' in the circumstances listed?

Question 13:  Can persons functioning under one of the exclusions listed in Rule .003 of the board's rules provide medications not prescribed for an individual patient?

Question 14:  Does the prohibition in Rule .005 concerning the 'exercise of independent medical judgment' apply to the exceptions identified in Rule .003?

Question 15:  Does Rule .003(1) unconstitutionally discriminate against physicians who practice in private offices or in clinics where the patient is not institutionalized or which do not have an organized medical staff?

In our opinion, Rule .003 merely means that the Board of Medical Examiners has not addressed the delivery of medical care under the circumstances listed. Physicians delegating the performance of medical services under those circumstances must comply with the Medical Practice Act itself, as must every physician. They are not limited by the board's rules under question, nor do they have the guidance provided by such rules for physicians working in settings where the rules do apply. Thus, persons functioning under one of the exclusions may provide medications to the extent permitted by the Medical Practices Act, the Pharmacy Act, the Dangerous Drugs Act, and the Controlled Substances Act. Since we do not construe Rule .003 as a positive grant of authority to any class of physicians, we do not believe it violates the equal protection clauses of the United States and Texas Constitutions by singling out one class of persons for benefits. See also Thompson v. Board of Medical Examiners, supra.

We need not answer your two remaining questions, which are premised on the assumption that Rule .003 provides exemptions for those persons which it enumerates.

You have attached appendices A, B and C describing specific fact situations in which standing delegation orders might be used. You ask whether such orders may legally be used under those circumstances. However, since these questions require the resolution of fact questions, which cannot be done in an Attorney General Opinion, we will not answer them.

## SUMMARY

The Board of Medical Examiners has implied statutory authority to regulate the delegation of medical acts to non-physicians.  Board rules which use the terms "in keeping with

sound medical practice" and "independent medical judgment" are not therefore void for vagueness. Under certain circumstances, the Board of Medical Examiners has authority to regulate the activities of an unlicensed person performing health services under the supervision of a physician. A physician supervising an unlicensed person providing medical care under article 4528, V.T.C.S., will ordinarily be liable for the acts of that person. The use of presigned prescriptions is not prohibited by the pharmacy and drug laws of this state. Rule 386.17.00.004 promulgated by the Board of Medical Examiners does not attempt to authorize the practice of medicine by non-physicians. Rule 386.17.00.003 of the board does not constitute a grant of authority to anyone or a limitation of anyone's authority to use standing obligation orders.

Very truly yours,

MARK WHITE
Attorney General of Texas

JOHN W. FAINTER, JR.
First Assistant Attorney General

RICHARD E. GRAY III
Executive Assistant Attorney General

Prepared by Susan L. Garrison
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Susan L. Garrison, Chairman
Rick Gilpin