

# Fourth Court of Appeals
## San Antonio, Texas

### OPINION

No. 04-13-00172-CV

**CITY OF SAN ANTONIO**,
Appellant

v.

Joseph **SALVAGGIO**,
Appellee

From the 57th Judicial District Court, Bexar County, Texas
Trial Court No. 2011-CI-04708
Honorable Richard E. Price,[1] Judge Presiding

Opinion by:   Rebeca C. Martinez, Justice

Sitting:      Karen Angelini, Justice
              Marialyn Barnard, Justice
              Rebeca C. Martinez, Justice

Delivered and Filed:  November 20, 2013

AFFIRMED

The City of San Antonio appeals the trial court's summary judgment in favor of San Antonio Police Lieutenant Joseph Salvaggio affirming the hearing examiner's award overturning Salvaggio's indefinite suspension and reinstating him to his former position. We affirm the trial court's judgment.

---

[1] The Honorable Richard E. Price, presiding judge of the 285th Judicial District Court, Bexar County, Texas, signed the judgment; however, the Honorable Martha Tanner, former presiding judge of the 57th Judicial District Court, Bexar County, Texas, presided over the summary judgment hearing.

## FACTUAL AND PROCEDURAL BACKGROUND

The basic facts are undisputed and set forth in detail in the hearing examiner's written decision and award. On January 22, 2010, Salvaggio, a lieutenant with the San Antonio Police Department (SAPD), took an examination to qualify for promotion to the rank of captain. The exam had a two-hour morning session consisting of a written exam and a two-hour afternoon session consisting of a scenario-based exam. The examination was proctored by two City employees. Before the morning session began, a proctor placed three-inch square post-it notes with numbers written on them on the tables in the testing room. The numbers on the post-it notes corresponded to the numbers assigned to the candidates taking the test. This was the first time post-it notes were used to designate assigned seats. Before the test began, a proctor read instructions regarding the examination. One of the instructions was that if a candidate needed a restroom or water break during the exam, he was to cover his answer sheet, leave all the test materials on the table, and a proctor would escort him out. No description or definition of "test materials" was given, and no instructions were given regarding scribbling notes on the numbered post-it notes. The candidates were instructed that they could write in their test booklets, but were told not to make extraneous marks on the answer sheet which could cause the answer sheet to be misread. Between the morning and afternoon exam sessions, the candidates were permitted to use any study materials to prepare for the second part of the test. Moreover, in past promotional exams, the proctors allowed the candidates to use scratch paper during the examination and did not collect the scratch paper at the end of the exam.

During the morning exam session, Salvaggio used the post-it note as scratch paper, writing down notes about topics he wanted to review during the mid-day break. Salvaggio later requested permission to leave the exam room to go to the restroom. The proctor told him to wait because another candidate had just gone to the restroom. When the proctor returned to tap Salvaggio on

the shoulder to indicate it was his turn for the restroom, she noticed something in his hand. When Salvaggio stood up he still had the object in his hand, and the proctor asked him what it was— Salvaggio handed it to her. The proctor saw it was the post-it note with some writing on it. She told Salvaggio he could not take the post-it note out of the exam room and she retained the note. Salvaggio went to the restroom and returned to the exam room. He made no changes to his morning session answers before turning them in. The proctor reported the incident to a captain who was on site working on the second phase of the exam, and the captain reported it to an assistant police chief who was also present. The two officers questioned the proctors about what instructions were given regarding removing test materials from the exam room and learned that no definition of "test material" was given to the candidates.

Several months later, some incidents involving several candidates taking test booklets out of a detective promotional examination were reported to the media. During an investigation of these incidents by SAPD Internal Affairs, the post-it note incident with Salvaggio was mentioned and a separate investigation was opened. Salvaggio was notified of the Internal Affairs investigation in May 2010. On July 16, 2010, Salvaggio received a letter notifying him that he was charged with violating Civil Service Rule (12): "Violation of an applicable fire or police department rule or special order." TEX. LOC. GOV'T CODE ANN. § 143.051(12) (West 2008). The department rule allegedly violated by Salvaggio was identified as SAPD Rule 3.04(C):

> Rule 3.04 — RESPONSIBILITY TO SERVE THE PUBLIC:
> Members shall serve the public through direction, counseling, assistance, and protection of life and property. Members shall also respect the rights of individuals and perform their services with honesty, sincerity, courage, and sound judgment.
> …
>
> (C) CONDUCT AND BEHAVIOR:
> Members, whether on-duty or off-duty, shall be governed by the ordinary and reasonable rules of good conduct and behavior, and shall not commit any act tending to bring reproach or discredit to themselves or the department.

As the specific factual basis for the disciplinary suspension, the letter stated that "On January 22, 2010, during the administration of the Police Captain's Promotional Examination . . . Lieutenant Joseph Salvaggio attempted to remove test material from the testing room."

SAPD Chief William McManus has a Chief's Advisory Action Board that is comprised of two advisory boards—a citizen advisory action board whose members are community citizens appointed by the City Council, and a police advisory action board whose members are police officers appointed by the Chief of Police. The investigative report prepared by Internal Affairs was submitted to both advisory action boards for review and recommendation. After the citizen advisory board reviewed the Internal Affairs report and heard Salvaggio's testimony, it recommended that the charge be dismissed as unfounded. The police advisory board took several votes before reaching a consensus and recommending that Salvaggio be suspended for thirty days.

Chief McManus then reviewed the Internal Affairs investigative report, the advisory boards' recommendations, and met with his command staff and with Salvaggio. At the conclusion of his review, Chief McManus concluded that Salvaggio's conduct with respect to the post-it note violated SAPD Rule 3.04(C), and thereby violated Civil Service Rule (12). Chief McManus made the decision to indefinitely suspend Salvaggio. An indefinite suspension is equivalent to dismissal from the department. *See* TEX. LOC. GOV'T CODE ANN. § 143.052(b) (West 2008) (authorizing the head of a police department to suspend a police officer for violation of a civil service rule for a period not to exceed 15 days or for an indefinite period which is equivalent to dismissal).

Salvaggio rejected an offer to voluntarily accept a temporary suspension and elected to appeal his indefinite suspension to an independent third party hearing examiner, instead of to the Civil Service Commission. *See* TEX. LOC. GOV'T CODE ANN. § 143.057(a) (West 2008). In ruling on an appeal, a hearing examiner has the same powers and duties as the Civil Service Commission, except the power to make rules. TEX. LOC. GOV'T CODE ANN. § 143.057(f) (West 2008); *see*

Collective Bargaining Agreement between City of San Antonio and San Antonio Police Officers' Association (CBA), Art. 27, § 11 (stating that a hearing examiner has "all the powers and only those powers vested in the Commission under Chapter 143 of the Local Government Code and the Commission Rules, with respect to suspensions, terminations, and demotions, with the sole exception of the power to amend such rules"). Section 143.053 defines the Commission's powers and the procedure for an appeal to the Commission. TEX. LOC. GOV'T CODE ANN. § 143.053 (West 2008). It states that in an appeal the department head is restricted to the original written statement and charges, which may not be amended. *Id.* § 143.053(c). In its decision resolving the appeal, the Commission is required to determine whether the suspended officer should be (1) permanently dismissed, (2) temporarily suspended, or (3) restored to his or her former position in the department. *Id.* § 143.053(e). The Commission is authorized to suspend or dismiss a police officer only for violation of a civil service rule and only after a finding by the Commission of the truth of the specific charges against the officer. *Id.* § 143.053(g).

At a hearing on December 7-8, 2010,[2] the hearing examiner was presented with testimony, evidence, and argument from both sides; in addition, post-hearing briefs were submitted by both sides. On March 9, 2011, the hearing examiner rendered a decision and award in favor of Salvaggio, concluding that the charge against him was "not true" because the City failed to establish that he violated any rule. Having found there was no just cause to sustain the disciplinary action, the hearing examiner overturned Salvaggio's suspension and restored him to his former position with full back pay. TEX. LOC. GOV'T CODE ANN. § 143.053(f). In a lengthy written decision, the hearing examiner found that:

1. It is undisputed that the term "test materials" was never defined by the Commission or the test proctors;

---

[2] The appellate record does not contain a transcript of this hearing.

2. The closest thing to a definition of "test materials" was in the sixth bullet paragraph of the "Instructions for Promotional Examinations," which states in relevant part, "If you finish before time is called, please bring your test booklet, answer sheet and pencils to the front/back and give them to the individual at the collection table;"

3. Witness testimony regarding what were "test materials" was presented by both sides, with the City's witnesses stating they believed the post-it notes were "test materials," and the police union's witnesses stating they did not;

4. The post-it notes were used in the testing room to designate where candidates were to sit, and were thrown in the trash after testing was complete, i.e., the post-it notes were not treated similarly to the test booklet, answer sheet and pencils;

5. The Commission has the sole authority to establish rules and regulations pertaining to promotion of police personnel and the Commission Director, and municipal employees working under the Director, have the responsibility of maintaining the fairness of the promotional exam; therefore, "the Commission is the sole authority to determine what constitutes 'test material;'"

6. Neither the municipal employees acting as proctors for the examination nor the Sergeant charged with conducting the Internal Affairs investigation solicited the Commission's determination of whether the post-it note and its use in the testing area caused it to become "test material;"

7. Chief McManus determined that the post-it note was test material, concluded that Salvaggio attempted to take it out of the test area, and thus found that Salvaggio had violated the rule against taking test material outside;

8. Since "test material" was undefined by the Commission, Chief McManus did not have authority to define "test materials" to include the post-it note;

9. By interpreting the rule against taking test material outside of the test area, Chief McManus "engaged in the creation of a new rule," which he has no authority to do; and

10. A definitive determination on whether it was a rule violation for Salvaggio to attempt to take the post-it note out of the test area "has not and was not made before the Chief disciplined Lt. Salvaggio."

Based on these specific findings, the hearing examiner stated his conclusion as follows:

Regarding matters of discipline, the CBA requires that Employer establish by a preponderance of the evidence that the alleged misconduct occurred. Here, the allegation against Salvaggio is that he violated a rule by attempting to remove test material out of the testing room. **Because of the wording of the allegation, it was**

**essential for the City to establish that the post-it note and its use was test material**. Based on the above findings, i.e., that there exists no definition for test material and that the Chief has no authority to find a Commission violation where the Commission has made no ruling that the post-it note was test material, the arbitrator concludes that the City cannot meet the 'preponderance of evidence' test. Thus, the charge against Salvaggio cannot be found to be true.

(emphasis added).

The hearing examiner's written decision also contained additional findings addressing the investigative report's "underlying inference that Lt. Salvaggio engaged in an act of cheating or attempted cheating." The hearing examiner found the record did not contain any evidence that Salvaggio engaged in any conduct that constitutes cheating or an attempt to cheat.

The City filed an appeal of the hearing examiner's decision and award in district court. *See City of Houston v. Clark*, 197 S.W.3d 314, 324 (Tex. 2006) (holding municipality, as well as employee, has right to appeal hearing examiner's award in district court). As grounds for the appeal, the City alleged that the hearing examiner "was without jurisdiction and exceeded his jurisdiction" and acted as a policy maker thereby invading the legislative realm protected by the non-delegation doctrine; it also alleged the hearing examiner's award was arbitrary and unreasonable. *See* TEX. LOC. GOV'T CODE ANN. § 143.057(j) (West 2008) ("A district court may hear an appeal of a hearing examiner's award only on the grounds that the arbitration panel was without jurisdiction or exceeded its jurisdiction or that the order was procured by fraud, collusion, or other unlawful means."). Salvaggio filed a plea to the jurisdiction asserting the trial court had no jurisdiction because none of the grounds under section 143.057(j) existed. The trial court denied the plea. The City and Salvaggio then filed cross-motions for summary judgment, asserting they were entitled to judgment as a matter of law. Salvaggio attached the hearing examiner's award as his summary judgment evidence, while the City attached the CBA, the Civil Service Rules, and the SAPD Rules as its summary judgment evidence. After a hearing, the trial court

rendered a final judgment denying the City's motion and granting summary judgment in favor of Salvaggio, directing the City to implement the hearing examiner's award reinstating Salvaggio to his former position with full back pay. The City now appeals.

## DISCUSSION

On appeal, the City asserts the trial court erred in granting summary judgment for Salvaggio and should have instead granted its motion for summary judgment because the hearing examiner exceeded his jurisdiction. Salvaggio responds that he was entitled to summary judgment as a matter of law because the City failed to establish any ground for its appeal.

### *Standard of Review*

We review a trial court's grant or denial of summary judgment de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). To prevail on a traditional motion for summary judgment, the moving party must prove that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion." TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co., Inc.*, 690 S.W.2d 546, 548 (Tex. 1985). "When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex. 2004). When there are competing summary judgment motions on the same issues, and the trial court grants one and denies the other, we consider the summary judgment evidence presented by both sides and determine all questions presented, and, if we determine the trial court erred, we render the judgment the trial court should have rendered. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

*Analysis*

The Fire Fighters and Police Officers Civil Service Act (the Act) establishes a statutory framework for police officers to challenge disciplinary suspensions. *See* TEX. LOC. GOV'T CODE ANN. §§ 143.001—.363 (West 2008 & Supp. 2012). When a police officer elects to have his suspension reviewed by an independent third party hearing examiner, instead of the Commission, the hearing examiner's decision is final and binding on all the parties. *See* id. § 143.057(c) (West 2008); *see also City of DeSoto v. White*, 288 S.W.3d 389, 392 (Tex. 2009). There are very narrow grounds on which a hearing examiner's award may be appealed to district court. TEX. LOC. GOV'T CODE ANN. § 143.057(j). One of the permissible grounds for an appeal is that the hearing examiner acted without or exceeded his jurisdiction. *Id.* The Texas Supreme Court has acknowledged the difficulty of stating a test for determining when a hearing examiner exceeds his jurisdiction, but framed the relevant inquiry by stating that, "a hearing examiner exceeds his jurisdiction when his acts are not authorized by the Act or are contrary to it, or when they invade the policy-setting realm protected by the nondelegation doctrine." *City of Waco v. Kelley*, 309 S.W.3d 536, 542 (Tex. 2010) (quoting *City of Pasadena v. Smith*, 292 S.W.3d 14, 21 (Tex. 2009)). In *City of Pasadena*, the Supreme Court addressed the jurisdictional boundaries of appeals from disciplinary suspensions to hearing examiners under the Act. *Kelley*, 309 S.W.3d at 541. The court held that the Act's deadlines, procedures, and limitations pertaining to appeals to the Commission provide definite standards that apply equally to appeals to hearing examiners. *City of Pasadena*, 292 S.W.3d at 19-20. The court noted that the absence of such definite standards for hearing examiners would raise "nondelegation concerns" as hearing examiners could then engage in policy-making, which is a legislative function. *Id.* at 18-19 (citing *Proctor v. Andrews*, 972 S.W.2d 729, 735 (Tex. 1998)). Holding that the Act "both confers and limits the power of a hearing examiner," the court expressly stated that a hearing examiner is not authorized to make rules, but must follow the rules

prescribed by the legislature. *City of Pasadena*, 292 S.W.3d at 20; *see* TEX. LOC. GOV'T CODE ANN. § 143.010(g) (West 2008). Finally, the court stated that asserting the hearing examiner's decision is wrong is not the same as asserting the examiner lacked jurisdiction. *City of Pasadena*, 292 S.W.3d at 21.

The City relies on *City of Garland v. Byrd*, 97 S.W.3d 601 (Tex. App.—Dallas 2002, pet. denied). However, *Byrd* held that section 143.057's delegation of power to a hearing examiner was *not* an unconstitutional delegation of legislative power to a private entity in violation of the nondelegation doctrine. *Id.* at 605, 610. The *Byrd* court applied eight factors in what is known as the *Boll Weevil* analysis in examining the legislative delegation in section 143.057 as a whole to determine whether the powers granted to the private hearing examiner are "sufficiently limited, guided, and reviewable so as to pass constitutional muster." *Id.* at 610 (citing *Tex. Boll Weevil Eradication Found., Inc. v. Lewellen*, 952 S.W.2d 454, 472 (Tex. 1997) (discussing the eight factors)). The nondelegation doctrine is the constitutional restriction on the legislature's delegation of its powers to municipalities, administrative agencies, and private entities that requires "reasonable standards to guide the entity to which the powers are delegated." *Boll Weevil*, 952 S.W.2d at 467 (noting "[t]he separation of powers clause [TEX. CONST. art. II, § 1] requires that the standards of delegation be 'reasonably clear and hence acceptable as a standard of measurement,'" quoting *Jordan v. State Bd. of Ins.*, 160 Tex. 506, 334 S.W.2d 278, 280 (1960)); *see Proctor*, 972 S.W.2d at 734-35. "A delegation of power without such standards is an abdication of the authority to set government policy which the Constitution assigns to the legislative department." *City of Pasadena*, 292 S.W.3d at 18. The City argues here that the hearing examiner did not comply with two of the eight *Boll Weevil* factors, thereby violating the non-delegation doctrine and exceeding his jurisdiction under section 143.057(j). That is a misstatement of the *Boll Weevil* analysis, as it is the Act's legislative delegation of powers to the hearing

examiner that is analyzed under the eight factors, not the hearing examiner's actions in reviewing a particular disciplinary sanction. *See id.* at 18-19. Moreover, in stating the test for determining whether a hearing examiner exceeded his jurisdiction in a particular case, the Supreme Court rejected the test used in the *Byrd* case. *Id.* at 21 (noting that three courts of appeals, including the Dallas court of appeals in *Byrd*, had phrased the test for determining whether a hearing examiner exceeded his jurisdiction as "[a]n abuse of authority occurs when a decision is so arbitrary and unreasonable that it amounts to a clear and prejudicial error of law").

In his brief, Salvaggio provides a survey of cases in which courts have held that a hearing examiner exceeded his jurisdiction under the *City of Pasadena* test. In *City of Pasadena*, the Supreme Court held the hearing examiner exceeded his jurisdiction by summarily reversing the police officer's suspension without accepting and hearing any evidence. *Id.* at 20-21 (noting the Act requires the hearing examiner to base his decision on evidence submitted during a hearing). In *Kelley*, the Supreme Court held the hearing examiner exceeded his jurisdiction when he reduced the officer's suspension to a period of time not authorized by the Act and ordered back pay during the time the officer was suspended contrary to the Act. *Kelley*, 309 S.W.3d at 546-50 (also holding hearing examiner exceeded his jurisdiction by demoting the officer below his prior rank, which was outside the remedies available to the hearing examiner under the Act).

The intermediate courts of appeals that have addressed allegations that a hearing examiner exceeded his jurisdiction have required the city to establish that the examiner acted outside the scope of the Act or violated a specific requirement of the Act. *See, e.g.*, *City of Beaumont v. Mathews*, No. 09-10-00198-CV, 2011 WL 3847338, at *2 (Tex. App.—Beaumont Aug. 31, 2011, no pet.) (mem. op.) (holding hearing examiner acted contrary to the Act, thereby exceeding his jurisdiction, by reinstating firefighter without an evidentiary hearing where notice given to firefighter did state the charged acts); *Miller v. City of Houston*, 309 S.W.3d 681, 685-86 (Tex.

App.—Houston [14th Dist.] 2010, no pet.) (holding hearing examiner exceeded his jurisdiction by reforming indefinite suspension to temporary suspension of 92 days in excess of 15-day statutory period for temporary suspensions). In *City of Athens v. MacAvoy*, the court held the hearing examiner exceeded his jurisdiction by treating the statute requiring service of a signed complaint on the officer as a jurisdictional requirement for discipline, and in reinstating the officer on the basis of that procedural defect. *City of Athens v. MacAvoy*, 353 S.W.3d 905, 910 (Tex. App.—Tyler 2011, pet. denied). The court characterized the hearing examiner's action as akin to creating a rule, stating, "In the absence of a legislative directive that the failure to provide a complainant's statement prior to discipline means that the officer will escape discipline, the hearing examiner exceeded his jurisdiction by crafting such a rule." *Id.*; *see also City of Mission v. Gonzalez*, No. 13-10-00688-CV, 2012 WL 3762040, at *4-5 (Tex. App.—Corpus Christi-Edinburg Aug. 30, 2012, pet. denied) (mem. op.) (affirming dismissal of city's declaratory judgment suit seeking to overturn hearing examiner's award reinstating firefighter based on allegation examiner exceeded his jurisdiction and holding examiner did not exceed his fact-finding role and did not impose a new rule or policy). Where a city seeks to appeal a hearing examiner's award but fails to make a substantial allegation that the hearing examiner exceeded his jurisdiction, or invaded the policy-making realm, the courts have held that the trial court lacks subject matter jurisdiction over the appeal. *See, e.g., City of Houston v. Tones*, 299 S.W.3d 235, 239-40 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (city's "unfounded allegations" that hearing examiner misapplied a provision of the Act were not supported by any case authority and did not amount to hearing examiner exceeding his jurisdiction; therefore, trial court had no jurisdiction to hear city's appeal and its judgment must be vacated and case dismissed for lack of subject matter jurisdiction).

Here, the City asserts that the hearing examiner exceeded his jurisdiction by "creating a new rule" concerning what constitutes "test materials" in a promotional exam, which is an action

not authorized by and contrary to the Act, and which infringes on the policy-making function of the Commission in violation of the non-delegation doctrine. The City also complains that the hearing examiner assumed the proctor's instruction not to remove "test material" from the testing room was a rule adopted by the Commission, which could only be interpreted by the Civil Service Commission, not by Chief McManus. The City correctly notes that the Commission has the sole power to create and adopt Civil Services rules, including those governing promotional exams and suspensions. TEX. LOC. GOV'T CODE ANN. §§ 143.008, 143.032(a) (West 2008); *City of Pasadena*, 292 S.W.3d at 20 (hearing examiner is not authorized to make rules, but must follow those in the Act). If the hearing examiner had, in fact, created a rule defining what constitutes "test material," such action might well exceed his jurisdiction under the Act.

However, the City's entire jurisdictional argument is based on a faulty premise—that the hearing examiner created or adopted a definition for the term "test materials." Reading the hearing examiner's written decision as a whole, it is clear that the hearing examiner did not define "test materials" to exclude, or include, the post-it note. To the contrary, the examiner based his decision on the fact that the term "test materials" *had never been defined* by the Commission, which was the sole entity authorized to define the term. The examiner then concluded that, under the Act, Chief McManus had no authority to define "test materials" as including the post-it note, which he implicitly did in finding that, by "attempting to take test materials out of the test area," Salvaggio violated SAPD Rule 3.04(C) and Civil Service Rule (12). The examiner thus concluded that the Chief had effectively created a new rule "by interpreting the rule against taking test material outside of the testing area."[3] The examiner noted that "a definitive determination" of whether

---

[3] In arguing that the hearing examiner "assumed the proctors' instructions were rules" and thereby himself created a new rule, the City isolates the examiner's use of the word "rule" instead of "instruction" from the context of the entire decision and award.

Salvaggio's conduct was a rule violation was not made before the Chief disciplined him, as required by Chapter 143. Given the phrasing of the statement of charges against Salvaggio, the examiner concluded that the City was required to establish that the post-it note was "test material" and that the City had failed to prove the allegation by a preponderance of the evidence; therefore, the charge "could not be found to be true." Once the hearing examiner found the charge against Salvaggio to be "untrue," which was within his role as fact-finder, he was limited in the decision he could render in that an officer must be restored to the same or equivalent classification if the charges are found to be untrue. *Kelley*, 309 S.W.3d at 543; TEX. LOC. GOV'T CODE ANN. §§ 143.053(e), (g). The hearing examiner appropriately rendered the award required by his findings under section 143.053. Finally, in his written decision, the hearing examiner correctly explained the scope of his jurisdiction and power under the Act. The hearing examiner's actions did not exceed his jurisdiction under the Act.

The City also argues the hearing examiner exceeded his jurisdiction by requiring Chief McManus to prove "something different" than the charge he filed against Salvaggio and by failing to determine whether Salvaggio committed an act tending to bring reproach or discredit to himself or the department in violation of Department Rule 3.04(C). The City asserts the hearing examiner focused on the wrong thing—whether the post-it note was "test material"—and "did not decide whether McManus' charge was 'true.'" The City's argument overlooks the fact that, as stated in the written charge made by McManus, the *only* factual basis for Salvaggio's purported violation of Department Rule 3.04(C) was that he "attempted to remove test material from the testing room." *See* TEX. LOC. GOV'T CODE ANN. § 143.053(c) (in an appeal of a disciplinary suspension, the department head is restricted to the original written statement and charges which may not be amended). The hearing examiner's written decision clearly states at least twice that the charge against Salvaggio "cannot be found to be true" and "is not true" because the City failed to prove

that he attempted to take test material out of the test area. Moreover, even though the hearing examiner did not expressly refer to Department Rule 3.04(C) in the "Additional Findings" portion of his award, he concluded that the record contained no evidence that Salvaggio engaged "in any conduct that constitutes cheating or an attempt to cheat."

## CONCLUSION

Viewing the summary judgment record in the light most favorable to the City, the City's arguments that the hearing examiner exceeded his jurisdiction are not supported by the facts or the law. Therefore, Salvaggio was entitled to summary judgment as a matter of law, and the trial court did not err in denying the City's summary judgment motion. Accordingly, we affirm the trial court's judgment.

Rebeca C. Martinez, Justice